126 So.2d 289 (1961)
Susie REGISTER, Appellant,
v.
Harris W. REDDING, dba Jelly Beans Service Station, Appellee.
No. C-191.
District Court of Appeal of Florida. First District.
January 24, 1961.
Truett & Watkins, Tallahassee, for appellant.
Keen, O'Kelley & Spitz, Tallahassee, for appellee.
WIGGINTON, Chief Judge.
Plaintiff has appealed from a summary final judgment entered in favor of defendant. By her principal point on appeal appellant contends that the pleadings, depositions, affidavits and exhibits on file before *290 the court established a genuine issue of material fact and the trial court erred in holding that defendant was entitled to judgment as a matter of law.
The action is one for damages arising out of the alleged negligent operation of a motor vehicle owned by defendant. Defendant's answer interposed the affirmative defense that he was not the owner of the motor vehicle in question at the time of the accident out of which plaintiff's damages arose. After commencement of the action depositions of defendant and the alleged purchaser of the motor vehicle in question were taken. In opposition to defendant's motion for summary judgment plaintiff filed an affidavit attached to which was a certified copy of a title certificate showing that at the time of the accident the motor vehicle was registered in the name of defendant.
Based upon the pleadings, depositions and affidavits mentioned above the trial court entered an order in which he specifically found that defendant had sold the motor vehicle in question to one Roger L. Leilich on a date prior to that on which the accident occurred. Based upon this finding the court granted defendant's motion for summary judgment and entered final judgment in defendant's favor. The principal thrust of the appeal questions the correctness of the trial court's finding that the offending motor vehicle had been sold by defendant to Leilich prior to the date of the accident, it being contended that this was a material fact in the case on which the evidence was in dispute and which should have been resolved only by a jury.
The evidence revealed by the depositions and affidavits was uncontroverted. Both defendant and his alleged purchaser were consistent in their narration of the facts surrounding transfer of possession of the motor vehicle from defendant to the purchaser. The undisputed facts, together with all inferences which may be reasonably drawn therefrom, when considered in a light most favorable to plaintiff may be summarized as follows.
Prior to August 1959 defendant and his purchaser had been personal friends for a period of some eight years. Defendant owned and used the motor vehicle in connection with his business. Title to the motor vehicle was registered in defendant's name. Sometime during August of 1959 defendant agreed to sell the vehicle to his friend Leilich. There was no written evidence of this agreed transaction. The sale price of the vehicle was $400 which the purchaser agreed to pay in weekly installments of no specific amount until the sale price was paid in full. The delayed payments were to be without interest and to be completed by November 1, 1959. It was agreed that title to the vehicle would remain registered in plaintiff's name until the full purchase price was paid. Possession of the vehicle was delivered by defendant to Leilich at the time of the agreement in August, and both Leilich and his wife used the vehicle thereafter until it was returned to defendant at the time and under the circumstances hereinafter stated. At the time of agreement and delivery of possession of the vehicle defendant owned liability insurance on the vehicle which he agreed to maintain until the purchase price was paid. Defendant continued to maintain this insurance at all times thereafter material to our consideration of this case. The alleged purchaser made no down payment on the vehicle at the time of the agreement, and made no payments whatever on account of the purchase price prior to November 1, 1959, or at any time thereafter. No demand for payment was made by defendant on the purchaser, nor was there any demand made for a return of the vehicle to defendant. It was on January 30, 1960, while the vehicle was in the exclusive possession and control of Leilich and being driven by his wife, that the accident occurred out of which plaintiff's damages arose. During the time of his possession of the vehicle Leilich purchased some new tires and had some minor *291 repair work done on the motor. When the time arrived for purchasing a new automobile license tag for the vehicle Leilich voluntarily returned it to defendant on February 20, 1960. Upon its return defendant accepted redelivery without question and without demand for payment of the purchase price or compensation for its use. Leilich procured no insurance on the vehicle during the time it was in his possession.
Within four weeks after returning the questioned vehicle to defendant, Leilich purchased from him another motor vehicle for the price of $200. At the time of this purchase the title certificate was immediately assigned to Leilich by defendant, but was not recorded. In connection with this transaction Leilich made a $50 down payment on the vehicle at the time of purchase and delivery of possession, and had made regular periodic payments on the purchase price at the time his deposition was taken.
The prime question presented for decision is whether the evidence which was before the court when he granted summary judgment reveals without dispute that a bona fide sale of the vehicle in question was made by defendant to Leilich at any time prior to the accident. Whether a sale was actually consummated is a question of law to be determined from the facts in evidence. The mere assertion by defendant that he sold the vehicle to Leilich, and Leilich's assertion that he purchased the vehicle, are mere conclusions of law and of no probative effect.
It has been held that mere retention of title to a motor vehicle as security for payment of the purchase price thereof is not sufficient to impose tort liability on the titleholder for the negligent operation of the vehicle by another. If the facts establish a definite intention to make transfer of the beneficial ownership of the motor vehicle to a purchaser, and such intention is coupled with actual delivery of the vehicle and tender and acceptance of a part payment on the purchase price, the sale of the vehicle will in legal effect be considered effectuated and the vendor absolved from any liability for the vehicle's subsequent negligent operation.[1] The foregoing rule was followed by this court in the Cox Motor Company case.[2] Whether in the case we now review the defendant and Leilich both entertained an intent to transfer beneficial ownership of the vehicle to Leilich prior to the date of the accident must be determined from their overt acts which occurred at the time of agreement to purchase and sell and at all material times thereafter. The mere fact that the evidence concerning the intent of the parties is uncontroverted does not necessarily mean that there is no genuine issue as to this material fact, if the uncontradicted evidence is lawfully susceptible to two or more conflicting inferences. A court which draws its own inference from among the lawful inferences, and enters a summary judgment based thereon, deprives the parties of their right to a trial by a jury contrary to the purpose and intent of the rule governing summary judgments.[3]
From our review of the record it clearly appears that the evidence with respect to the intention of defendant and his purchaser as to the time when beneficial ownership of the vehicle should be transferred to the purchaser is reasonably susceptible of at least two contrary inferences.
A jury could reasonably infer from the evidence that it was the intention of the parties to the transaction that beneficial ownership of the vehicle be transferred to the purchaser at the time of their agreement in August 1959 to purchase and sell. Such conclusion could be reasonably *292 inferred from the fact that it was on that date prior to the accident that defendant agreed to sell and Leilich agreed to purchase the vehicle for the price of $400 to be paid in weekly installments on or before November 1, 1959, which agreement was coupled with the immediate delivery of possession and unrestricted use of the vehicle to Leilich.
On the other hand a jury could likewise reasonably infer from the overt acts of the parties that there was no intention on their part to transfer beneficial ownership of the vehicle to Leilich until after the purchase price had been paid in accordance with their agreement. Such inference might logically arise from the facts that defendant retained the title certificate to the vehicle with the stated intention that he had planned to transfer it to Leilich on November 1, 1959, after the purchase price was paid; that the purchaser made no down payment at the time he accepted delivery and possession of the vehicle and likewise made no payments on the purchase price at any time thereafter; that at no time after delivering possession of the vehicle to Leilich did the defendant demand payment of any part of the purchase price nor was any made by the purchaser; that on February 20, 1960, when it became necessary to purchase a new license tag for the vehicle Leilich voluntarily returned possession of it to defendant; that when accepting return of the vehicle defendant made no demand on Leilich for the payment of the purchase price nor did he demand any compensation for its use during the several months it was in Leilich's exclusive possession and control; that during the entire time the vehicle was in Leilich's possession defendant maintained in force and effect liability and comprehensive insurance on it which he agreed to carry until the purchase price was paid. The jury could have considered these facts in light of the contrary course of business dealings followed by the parties when Leilich subsequently purchased a different vehicle from defendant in connection with which the title certificate was immediately assigned to him, Leilich made a substantial down payment at the time he accepted delivery and possession, and thereafter made regular installment payments on the purchase price down to the date his deposition was taken.
The evidence relating to the procurement and maintenance by defendant of liability insurance on the vehicle during the time it was in possession and control of Leilich was sufficient in itself to create an issue of fact as to the true intention of the parties regarding the time when beneficial ownership of the vehicle was to be transferred to the purchaser. This issue of fact standing alone was sufficient to preclude the entry of summary judgment.
In the Barnett case plaintiff was suing for personal injuries arising out of the negligent operation of a vehicle allegedly owned by defendant. There was a dispute issue as to the ownership of the vehicle at the time of the accident out of which the cause of action arose. The evidence tended to show that defendant Butler had previously sold the vehicle to one Currington who was operating it at the time of the accident. As in the case we are now considering, there was no written contract regarding the sale but possession of the vehicle had been delivered to Currington who had been making regular installment payments on the purchase price from the time of delivery to and including the date of the accident. During the trial plaintiff attempted to prove that defendant maintained liability insurance on the vehicle in question after the date on which it was contended that he had sold the vehicle to the third party operator. This proof was rejected by the court. At the conclusion of plaintiff's evidence the court granted a directed verdict in favor of defendant on the ground that plaintiff had failed to prove that defendant was the owner of the vehicle which caused the damage alleged in the complaint. In reversing the judgment entered in defendant's favor the Second District Court of Appeal held that the proffered evidence *293 relating to liability insurance which was excluded by the court was material in determining the question of ownership of the vehicle, and the trial court committed error in excluding that evidence from the jury's consideration. In speaking through Mr. Justice Thomas, Associate Judge, the court said: "If, as Butler insists, he was not the owner of the car, but had sold it to Currington, it seems to us reasonable that he should have been obliged to explain, and the jury should have been given the opportunity to consider, his reason for securing liability insurance, when insurance to indemnify him from loss, theft and collision would have protected his interest in the property."[4] The foregoing rule announced in Barnett was quoted with approval by this court in Hicks.[5] In that case we held that in an action for damages where the ownership by defendant of the offending vehicle is in dispute, the question of whether the alleged vendor maintained liability insurance on the vehicle after its alleged sale to another was a proper subject of inquiry on trial. We held that under such circumstances the plaintiff had a right to develop the question of liability insurance by examining the defendant, and if such examination revealed that defendant had maintained such insurance after a purported sale of the vehicle and at the time the accident in question occurred, such facts could have properly been considered by the jury in determining the issue of ownership. We further held that such evidence would create such a genuine issue of a material fact as to preclude the direction of a verdict in defendant's favor.
For the reasons stated above we find and hold that the evidence on file before the court in this case established a genuine issue as to the fact of whether defendant owned the vehicle operated by Leilich's wife at the time its alleged negligent operation caused the damages sought to be recovered by plaintiff in this case. The trial court therefore erred in granting defendant's motion for summary judgment. The judgment appealed is accordingly reversed and the cause remanded for further proceedings consistent with the views expressed herein.
STURGIS, and CARROLL, DONALD, JJ., concur.
NOTES
[1] Palmer v. R.S. Evans, Jacksonville, Inc., Fla. 1955, 81 So.2d 635.
[2] Cox Motor Company v. Faber, Fla.App. 1959, 113 So.2d 771.
[3] Smith v. City of Daytona Beach, Fla. App. 1960, 121 So.2d 440.
[4] Barnett v. Butler, Fla.App. 1959, 112 So.2d 907, 909.
[5] Hicks v. Land, Fla.App. 1960, 117 So.2d 11.