127 So.2d 467 (1961)
Norris F. BASKIN and Ola G. Baskin, Appellants,
v.
Randolph GRIFFITH, May G. Aton, and Cary G. Pierce, sole heirs of William Griffith, Deceased, Appellees.
No. B-209.
District Court of Appeal of Florida. First District.
February 21, 1961.
Rehearing Denied March 22, 1961.
*468 W. Robert Smith, Ocala, and Sullivan, Admire & Sullivan, Coral Gables, for appellants.
Sturgis, Pattillo & Kynes, Ocala, for appellees.
CARROLL, DONALD K., Judge.
The defendants have appealed from a summary final decree entered against them by the Circuit Court for Marion County.
The principal question raised by the appellants on this appeal is whether the *469 plaintiffs' claim in this suit in equity was barred by laches. Accordingly, the following statement of the facts in evidence at the hearing on the motions for summary decree necessarily stresses the timetable of events:
On September 2, 1925, Dr. J.G. Baskin executed and delivered to the plaintiff Randolph Griffith, as the agent for the plaintiffs, a declaration of trust certifying "that the Heirs of Wm Griffith estate own one half of my undivided one sixth interest" in certain lands in Marion County which were held in the name of J.F. Cocowitch as trustee. Prior to that date William Griffith, who had practiced medicine in partnership with Dr. Baskin, died leaving the plaintiffs as his heirs. Dr. Baskin died intestate on July 12, 1938, leaving surviving him as his heirs at law his widow, the defendant Ola G. Baskin, and his two sons, the defendant Norris F. Baskin and James Alonzo Baskin. The latter son died intestate on December 28, 1939, leaving his widow, Louise Baskin, as his sole heir at law. Ola G. and Norris F. Baskin are the only defendants in the present suit, the said Louise Baskin not having been made a party thereto.
The said two sons of Dr. Baskin were appointed co-administrators of their father's estate until the death of James Alonzo Baskin on December 28, 1939, and then the defendant Norris F. Baskin became the sole surviving administrator of the said estate.
The one-sixth equitable interest of Dr. Baskin in the said lands was listed in the inventory and appraisement of his estate as being his alone. In the year 1940 the said lands were sold by the said J.F. Cocowitch and the net proceeds thereof were distributed pro-rata among the record owners of the various equitable interests therein. The said proceeds were distributed by a certain bank in the city of Ocala. In the disbursement of the said funds this bank paid the sum of $457.50 thereof direct to the said Louise Baskin, at her specific request and direction, as administrator or as sole heir at law of the said James Alonzo Baskin, the said sum not passing through the estate of Dr. Baskin. The bank also disbursed and paid to the defendant Norris F. Baskin, as administrator of his father's estate, the sum of $883.36, which he immediately disbursed by drawing administrator's checks on the said estate to the defendant Ola G. Baskin for $441.68 and to himself for the same amount.
The evidence shows that shortly after Dr. Baskin died, the plaintiff Randolph Griffith learned of his death, but neither the said plaintiff nor any other plaintiff ever filed any claim against Dr. Baskin's estate during its administration on account of the said declaration of trust. Nor did any of the plaintiffs ever inform either of the defendants of the trust claimed by the plaintiffs until August 17, 1942, when the plaintiff Randolph Griffith wrote to the defendants and demanded payment of the plaintiffs' claim to one-half of Dr. Baskin's one-sixth interest in the said lands or to the proceeds from the sale thereof. On September 27, 1942, the defendant Norris F. Baskin, who was then in the military service stationed in Camp Roberts, California, answered the said letter by writing to the plaintiff Randolph Griffith and stating that it was the position of his mother, Ola G. Baskin, and himself that there was no legal responsibility on their part to account to the Griffith heirs for any of the proceeds of the sale because of such heirs' negligence in failing to make known their claim and to properly and legally file the same in the administration of Dr. Baskin's estate and before the approval of the sale and distribution of the proceeds thereof by the court in which the said estate was administered. Specifically, the defendant Norris F. Baskin wrote: "I regret that you did not make known your claim during the Administration of the Estate so that the matter might then have been adjudged."
Dr. and Mrs. Baskin had lived in Dunnellon in Marion County for many years, and after his death Mrs. Baskin continued to *470 live in Dunnellon until January 15, 1946, when she moved to Miami, some three hundred miles away. When the defendant Norris F. Baskin was discharged from the United States Army on January 10, 1946, he, too, moved to Miami.
No suit was ever instituted by any of the plaintiffs against the defendants or either of them to enforce their claim under the declaration of trust until October 26, 1957, when the plaintiffs filed the present action on the common-law side of the Circuit Court for Marion County against the defendants as two of the three heirs of Dr. Baskin, seeking judgment for the amount of the plaintiffs' alleged interest in the proceeds of the sale, plus interest from June 8, 1940, the date of the distribution of a portion of the proceeds to the defendants. The defendants moved to dismiss the plaintiffs' complaint on the ground that the cause of action alleged therein was barred by the statute of limitations, but this motion was denied and the cause transferred to the equity side of the court. The defendants then filed their answer to the complaint alleging that the plaintiffs' cause of action accrued (a) in 1940 when the interest of Dr. Baskin in the said lands was sold and the net proceeds from the sale distributed to his heirs; or (b) in 1942 or prior thereto when the plaintiffs alleged that they first discovered the trust; or (c) in 1942 when the plaintiffs' demand for payment was rejected by the defendants in the letter written by the defendant Norris F. Baskin dated September 27, 1942; and that, therefore, the plaintiffs' cause of action was barred by the statute of limitations or that the plaintiffs were barred and estopped by laches.
After depositions were taken, the defendants and the plaintiffs filed motions for summary final decrees, together with supporting affidavits. The Circuit Court denied the defendants' motion but granted the plaintiffs' motion and entered a summary final decree for the plaintiffs.
Among the findings made by the chancellor in his summary final decree are these: that the pro-rata share of the proceeds of the lands in question attributable to the one-sixth equitable interest in the said lands, after deducting outstanding obligations and expenses of sale, was $1,365 and that the defendants, Ola G. Baskin and Norris F. Baskin, each received the sum of $441.68 out of the said share of the proceeds of such sale; that the heirs of William Griffith were entitled to receive out of the proceeds of said sale the sum of $682.50, representing one-half of the aforesaid pro-rata share of the proceeds of such sale; that the plaintiffs, as the sole surviving heirs of the said William Griffith, are now entitled to receive the said sum of $682.50, which sum is now held by the defendants in trust for the plaintiffs. On the question of laches, the chancellor in his decree also found that no further action was taken by the plaintiffs after on or about September 27, 1942, to enforce the obligation of the defendants to the plaintiffs until on or about May 1956, when renewed demand was made by the plaintiff Randolph Griffith upon the defendant Norris F. Baskin, or until 1957 when this action was commenced, "although Plaintiffs had ample opportunity to do so"; that the defendants had suffered no prejudice, embarrassment, or inconvenience as a result of the delay in the commencement of this action, and, therefore, the defendants' plea of laches had not been sustained and the plaintiffs were not thereby estopped to seek the relief herein sought.
Finally, in the said summary final decree the chancellor held and decreed that "the Defendants hold in trust for Plaintiffs the sum of $682.50 and are indebted to the Plaintiffs in that amount, together with interest at the legal rate from September 27, 1942."
Before considering the question of laches, we point out and hold that the court clearly committed error in ruling that the defendants, Ola and Norris Baskin, who were two of the three heirs of the estate of Dr. Baskin, were liable for the entire value of the beneficial interest of the plaintiffs *471 in the lands in question. It is undisputed in the pleadings and the evidence that the Ocala bank which disbursed the proceeds from the sale of the said lands paid $475.50 direct to Louise Baskin at her direction and request without going through the estate of Dr. Baskin, and that out of the remaining proceeds $441.68 was paid to the defendant Ola G. Baskin and the same amount to the defendant Norris F. Baskin, the total amount so paid to these three persons being $1340.86. There is no allegation or proof in the record that either of the defendants, Ola G. Baskin and Norris F. Baskin in their individual capacities, or that the latter defendant, in his capacity of administrator of Dr. Baskin's estate, was guilty of any fraud, bad faith, or any wrongdoing whatsoever. Under these conditions, it seems to us not in keeping with equitable principles to impose a trust upon slightly less than two-thirds of the proceeds for the full value of the entire interest of the plaintiffs. A less important error is the finding by the chancellor that the pro-rata share of the proceeds of the sale attributable to the said one-sixth equitable interest in the said lands, after deducting outstanding obligations and expenses of sale, was $1,365, while he also held that the defendants, Ola G. Baskin and Norris F. Baskin, each received the sum of $441.68 out of said share of the proceeds of such sale. Although he made no finding as to the amount received by Louise Baskin, the evidence incontrovertibly showed that she received the sum of $457.50. These facts could permit a finding only that the three heirs of Dr. Baskin received a total of $1,340.86 for the one-sixth equitable interest of Dr. Baskin in the said lands. There is no allegation or proof anywhere in the record that the sale of lands was fraudulent, in bad faith, or that the lands were sold for anything less than their true market value.
Answering the question whether the present suit in equity was barred by laches is beset with some difficulty under the established rules. Statutes of limitation which declare that certain causes of action are unenforceable if actions thereon are filed more than a certain fixed period after the accrual of the cause of action, are not applied in courts of equity, which instead may apply the rules of laches, but such courts usually act or refuse to act on the basis of the provisions of statutes of limitations which relate to actions at law of like character. Hayes v. Belleair Development Company, 1935, 120 Fla. 326, 162 So. 698.
Another distinction is that the passage of time and nothing more activates a statute of limitation, but lapse of time alone is insufficient to support a finding of laches. Trueman Fertilizer Company v. Allison, Fla. 1955, 81 So.2d 734; Cook v. Navy Point, Inc., Fla. 1956, 88 So.2d 532. The applicability of the doctrine of laches depends upon the facts of the particular case. Wiggins v. Lykes Bros., Inc., Fla. 1957, 97 So.2d 273. Laches is principally a question of the inequity of permitting a claim to be enforced by equitable remedies in the face of a change in the conditions or relations of the parties occasioned by a delay that works a disadvantage to him against whom equitable relief is sought. Sharrow v. City of Dania, 1938, 131 Fla. 641, 180 So. 18.
The test of laches is whether there has been a delay which has resulted in injury, embarrassment, or disadvantage of any person, but particularly the persons against whom relief is sought. City of Eustis v. Firster, Fla.App. 1959, 113 So.2d 260. The Supreme Court of Florida has held that an element of the defense of laches is injury or prejudice to the defendant in the event relief is accorded to the plaintiff or in the event the suit is held not to be barred. Van Meter v. Kelsey, Fla. 1956, 91 So.2d 327. We held in Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, Fla.App. 1959, 108 So.2d 74, 84, that an aspect of laches necessary to preclude a party from obtaining relief otherwise justified "is that his adversary must have suffered some injury or the party asserting a right must have gained an unconscionable *472 advantage as the result of the passage of time."
The problem here, as usual, lies in the application of the rules to the facts. The record in the instant case clearly shows that the plaintiffs' cause of action against the defendants accrued no later than September of 1942, when the defendant Norris F. Baskin advised the plaintiffs that the defendants would not recognize any trust obligation on their part; that the plaintiffs took no steps to enforce their claim by court action until October 26, 1957, when the present action was filed  a period of fifteen years. The record reveals no attempt on the part of the plaintiffs to explain or justify this long period of time which they allowed to lapse before they filed the action.
If this were an action at law instead of a suit in equity and the defense of the statute of limitations had been invoked by the defendants, the action would be barred by the statute. Whether the obligation of the defendants is regarded as being founded upon an instrument of writing not under seal (as to which the statute provides for a period of five years) or an obligation not founded upon an instrument in writing (as to which the statute provides a period of three years), the statute of limitations ran against the claim of the plaintiffs no later than the year 1947, ten years before this action was actually filed by the plaintiffs. See Section 95.10, Florida Statutes, F.S.A. If, then, laches consisted of merely the passage of time, and if we applied by analogy the applicable statute of limitations, the present suit in equity would clearly be barred by laches. However, as we have seen, lapse of time alone is insufficient to support a finding of laches. The invoking of this doctrine requires a showing, not only of a lapse of time, but also that the delay was unreasonable and reacted to the disadvantage of the person seeking to raise the bar of laches. Dacus v. Blackwell, Fla. 1956, 90 So.2d 324.
Under the established law in Florida, then, a defense of laches should not be sustained without a showing, not only that there has been a passage of time, but also that the delay has resulted in injury, embarrassment, or disadvantage of any person, particularly the persons against whom relief is sought, or that the party asserting the right has gained an unconscionable advantage as a result of the lapse of time. The applicability of this doctrine depends upon the facts of the particular case. Therefore, we must turn to the record on this appeal to see whether a sufficient showing was made to meet these requirements.
Examining the evidence in the record before us on this point of laches we find the following:
The depositions of both of the defendants were before the court at the hearing on the motions for summary decree. During her cross-examination at the deposition hearing the defendant Ola G. Baskin was asked to state for the record the manner in which she had been prejudiced by the delay in the filing of the suit by the plaintiffs, and she replied, "Well, I can't answer that, to tell you the truth." Similarly, the defendant Norris F. Baskin during his cross-examination was asked in what manner the delay had prejudiced him or Mrs. Baskin, and he replied: "Well in my opinion, a claim should have been filed against the estate of J.G. Baskin by the Griffith heirs while it was open and being administered and the Court would then adjudge the matter. In addition, I understand the plaintiffs claim interest from the date of the sale of the lands, which occurred in 1940. * * * Well, of course, there have been financial expenses accruing from the fact that the claim has been asserted. * * *" The following interchange then occurred between the counsel for the plaintiffs and this defendant:
"Q. Well, that is no different than the expense you would have incurred had the claim been asserted in litigation immediately after the death of your father; is that correct? A. *473 Yes, sir; I would think so, because at that time I was in Ocala, I was administrator of the estate, and the expenses would not have been as heavy as they are because of the fact I now reside in Miami away from Marion County.
"Q. So then the prejudice you claim by this delay is constituted by the sole fact you no longer reside in Ocala, that instead you live in Miami; is that correct? A. That is not the sole fact. I stated before the expenses were heavier, that interest had been permitted to run up for a period of some 19 years now.
"Q. Well, if no interest were claimed, then the sole remaining prejudice by reason of the delay of the suit  A. I don't know, Mr. Pattillo  that is up for the Court to determine.
"Q. I am trying to get, not as a matter of law, but as a matter of fact, Mr. Baskin, what embarrassment or disadvantage or prejudice has accrued to you by reason of the delay in filing this suit? A. The monies are no longer intact; they have been distributed. In my opinion, that is quite a bit of prejudice.
"Q. Is there anything further? A. That is all."
In evaluating the above testimony of the two defendants in which they express their views as to the prejudice or other disadvantage which they suffered by reason of the plaintiffs' long delay in the filing of their claim, we are furnished some light by the following language used by the Florida Supreme Court in Bethea v. Langford, Fla. 1949, 45 So.2d 496, 498, in which is expressed what appears to be the basic reasoning underlying the requirement of laches regarding prejudice or disadvantage to a defendant by reason of delay in bringing suit:
"Though courts of equity do not look with favor upon stale demands, the delay required to render the defense of laches available `must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, as through loss or obscuration of evidence of the transaction in issue; or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted.' Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 152 So. 617, 618; Cone v. Benjamin, 157 Fla. 800, 27 So.2d 90."
If we were here reviewing a final decree entered by the chancellor after the pleadings had been settled and after a full hearing of the evidence on the merits of the cause, with a finding by the chancellor that the cause of action was not barred by laches, the question before us as to laches would be whether there was sufficient, competent evidence before the chancellor to support such finding. But where, as here, the decree is a summary final decree, the problem facing us is a vastly different one. A consideration of the nature and characteristics of summary decrees and the principles established in Florida concerning their entry will underscore this vital difference.
The summary judgment or decree, as contemplated by Rule 1.36 of the Florida Rules of Civil Procedure, 30 F.S.A., is a procedural device adopted in the interest of improving the administration of justice in our courts. The function of this rule is to avoid the expense and delay of trials when all the facts are admitted or a party is unable to support a fact contention by any competent evidence. National Airlines v. Florida Equipment Co. of Miami, Fla. 1954, 71 So.2d 741. As the name indicates, the procedure is "summary" in nature and it can, and often is, employed to bring a quick end to a plaintiff's cause of action or his opponent's defense. On hearing a motion for summary judgment or summary final decree, under our rules, a court is authorized to consider *474 forms of evidence, such as affidavits, which would normally be inadmissible at trial. In an action at law on a motion for summary judgment the court has no authority to substitute itself for the jury and determine controverted issues of fact. Connolly v. Sebeco, Inc., Fla. 1956, 89 So.2d 482. By the same token, we think, in an equity suit on a motion for summary final decree the court has no authority to substitute itself for the chancellor who will, after a full hearing on the merits, determine controverted issues of fact. This is so, of course, even if it should appear probable that the judge who is hearing the motion for summary final decree will be the same judge who will determine controverted issues of fact following a full hearing on the merits. This is something more than a mere "changing of judicial caps." When a judge hears the motion for summary final decree, his function is to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a final decree as a matter of law. When the judge is considering the entry of a final decree after a full hearing on the merits, he, as the trier of the facts, determines controverted factual issues, and draws inferences of fact from the substantial, competent evidence adduced by the parties.
Rule 1.36 of the Florida Rules of Civil Procedure provides in sub-paragraph (c) that upon the hearing of a motion for summary judgment or decree, after due notice, the judgment or decree sought "shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."
The words in the quoted rule "no genuine issue as to any material fact" may often fail to convey the depth of their meaning as stating a condition to the entry of a summary judgment or a summary final decree, as the quoted words have been construed and applied by the courts of this state. For instance, all of the evidence in a case may be uncontroverted, yet there may nevertheless exist a genuine issue as to a material fact that would preclude the lawful entry of a summary judgment or decree  when the evidence, though uncontroverted, is such that reasonable men might properly draw conflicting inferences of fact therefrom. Weber v. Porco, Fla. 1958, 100 So.2d 146; Smith v. City of Daytona Beach, Fla.App. 1960, 121 So.2d 440; Halavin v. Tamiami Trail Tours, Inc., Fla.App. 1960, 124 So.2d 746; Register v. Redding, Fla.App., 126 So.2d 289.
We have examined all of the evidence which was before the court at the hearing on the motions for summary final decree and are of the opinion that this evidence is lawfully susceptible of an inference that the defendants were sufficiently inconvenienced or disadvantaged or that the plaintiffs gained sufficient advantage by the delay in the filing of litigation to enforce the plaintiffs' claim, thus raising the bar of laches to their claim  in conjunction with the unquestionable lapse of fifteen years from the date of the accrual of their cause of action. More specifically, we hold that the evidence as to laches was sufficient to entitle the defendants to present their case in full on this and other issues at a hearing on the merits at which the chancellor would have an opportunity to hear and consider all of the evidence presented by all parties, with an opportunity to see, and observe the demeanor of, the witnesses, and then make his determination of the factual issues involved in the defense of laches.
Being of the opinion, to use the words of the rule, that there was a genuine issue as to a material fact and that the plaintiffs were not entitled to a summary final decree as a matter of law, we hold that the chancellor erroneously entered the summary final decree appealed from. The decree is, therefore, reversed and the cause remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded with direction.
*475 O'CONNELL, STEPHEN C., Associate Judge, concurs.
WIGGINTON, Chief Judge, specially concurs.
WIGGINTON, Chief Judge (specially concurring).
I fully concur in the able majority opinion written by Judge Carroll. In view of the remand of this cause for the taking of testimony and entry of final decree on the merits, it might prove helpful to comment on one phase of the case which to me appears to be a matter of some concern.
The purpose of this action is to establish an implied trust in the sale proceeds of certain lands in which plaintiffs claim to have had a one-half interest under a written declaration of trust. The land in question was owned by Dr. J.G. Baskin during his lifetime. Upon his death the land was listed in the inventory as an asset of Dr. Baskin's estate. During the course of administration the land was sold and two-thirds of the Baskin interest was paid to and became cash assets of the estate, the remaining one-third having been distributed directly to one of the beneficiaries of Dr. Baskin's estate. The estate was duly administered, closed and the assets distributed to the beneficiaries. Two of the beneficiaries of this estate who received two-thirds of the sale price of the property are the defendants to this cause. It is prayed that these defendants be required to pay to the plaintiffs one-half of the sale price of the land on the theory that they hold the sale proceeds under an implied trust for the benefit of plaintiffs.
In this aspect of the case I am concerned with the effect which the statute of non-claim applying to the administration of estates in Florida[1] has upon the right of the plaintiffs to prevail in this cause. It is undisputed that plaintiffs filed no claim against the J.G. Baskin estate for their share of the proceeds derived from the sale of the property in which they held a one-half interest. In fact their ownership of an interest in the land under the declaration of trust was not discovered until after the estate was closed and the assets distributed to the beneficiaries. If under these circumstances plaintiffs may impress an implied trust on the sale proceeds of the land in the hands of beneficiaries of the estate, the salutary purpose to be served by the statute of non-claim is completely destroyed. If a claimant under an undisclosed trust may trace the corpus of the trust through the hands of the administrator or executor of an estate against whom he has a claim into the hands of the estate's beneficiaries, and require such beneficiaries to account to him for his share of the corpus of the trust, then each beneficiary of an estate would be required to accept and dispose of at his peril any funds or property which may have been distributed to him as his rightful share of the estate. How long would the beneficiary of an estate be required to hold intact his distributive share of the estate before he would be safe in assuming that someone unknown to him would not thereafter be permitted to bring an action against him on the theory of a secret or undisclosed trust and require that he pay over to such claimant all or a part of the funds or property received from the estate? If such claimants are not estopped by laches from asserting claims of this nature under the circumstances present in this case, the rights of beneficiaries to estates administered in Florida would be seriously jeopardized.
It cannot be disputed but that the plaintiffs in this case would be barred from enforcing their claim against the estate of Dr. J.G. Baskin by having failed to file their claim in the estate within the time limited by the statute of non-claim, assuming that the Baskin estate was still open. Will the principles of laches therefore bar them from doing indirectly by this proceeding *476 in equity that which they would be precluded from doing under the statute if the Baskin estate was still in the process of administration? It is to be assumed that this matter will receive the careful consideration and study of the chancellor in the entry of his final decree upon the merits.
NOTES
[1] F.S. Sec. 733.16(1), F.S.A.