WIGGINTON, Chief Judge
(dissenting).
I regret that I am unable to concur with my esteemed colleagues in the holding that the summary judgment appealed herein was properly entered and should be affirmed.
The stolen articles insured by appellant consisted primarily of both antique and contemporary jewelry and silverware. The depositions of appellees’ three expert witnesses were taken by which they placed a value on certain of the stolen items. The values testified to correspond with the values specified in the proof of loss. Ap-pellee-insureds testified to the value of the remaining items by taking into account the replacement cost of comparable property. The testimony of the appellees conforms to the value of the articles as specified in the proof of loss. Appellant offered no proof by way of affidavit, deposition or otherwise to dispute the testimony of ap-pellees’ witnesses. Summary judgment was rendered in the exact amount claimed in the proof of loss furnished by appellees to the insurance company.
The insurance policy issued by appellant provides that in the event of loss by theft, the insured would be paid an amount equal to the actual cash value of the property at the time of loss, the limits of liability not to exceed the repair or replacement cost.
The principal thrust of appellant’s position is that the evidence submitted by ap-pellees valued the stolen property at its replacement cost as distinguished from its actual cash value at time of loss. They argue that replacement cost may not be equated with actual cash value as influenced by the elements of depreciation as reflected by the actual condition of the property at the time of the loss. Appellant therefore contends that appellees’ evidence is not sufficiently competent to establish the actual cash value of the stolen property as a basis for fixing the limits of appellant’s liability under its policy, nor is it sufficient to constitute a predicate for the judgment appealed.
In the depositions of appellees and their three expert witnesses they expressed their opinions as to the value of the property in question. All of these witnesses, in response to questions propounded by appellant’s counsel conceded that their opinions as to value were based primarily upon the retail replacement cost of similar property if purchased at or about the time of the loss.
The testimony of one of appellees’ expert witnesses, a qualified jeweler, was to the effect that the value of contemporary silverware depended almost entirely' upon its condition. He stated that if such articles were in good condition, their actual value would represent approximately eighty percent of the replacement cost if purchased new from a retail store. It is undisputed that most of the property stolen consisted of used contemporary silverware and only a small portion of it was fine jewelry and antiques. If such testimony had been submitted to a jury on trial, the jury would have been fully justified in awarding plaintiff a judgment for eighty percent of the retail replacement cost reflected in the proof of loss which forms the basis of the summary judgment appealed.
The testimony of some, but not all, of appellees’ witnesses indicates that they might have been using the term “replacement cost” to connote the cost of replacing *41 a particular item with another of comparable kind, quality, condition, and state of depreciation- as distinguished from the retail cost of a new item of the same type, make, and design. Considering the witnesses’ testimony in this light, a jury might be justified in awarding appellees a verdict for the full amount claimed in the proof of loss, which is the amount awarded by the trial judge in the summary judgment appealed.
It appears to be the general rule that the provisions of an insurance policy to the effect that liability shall not exceed the cost of repair or replacement is but a limitation on the insurer’s liability, and may not be construed as a substantive measure of damages which the insured is privileged to invoke. This is so, even though replacement cost may be considered by the trier of the facts as an element in determining the actual or market value of the lost property for which the insurance company is liable.[1]
The foregoing rule has been adopted by the courts of this state as reflected by the decision of the Supreme Court in New York Central Mutual Fire Ins. Co. v. Diaks,[2] in which it was held:
“The ‘actual cash value’ is not, of course, synonymous with replacement cost, or even replacement cost less depreciation. Vol. 2, Words and Phases, pp. 221-225; 1 C.J.S. p. 1434. ‘These considerations, however, do not negative consideration of the cost of reproduction or replacement as a factor in determining the actual cash value [of] * * * property insured.’ * * *
The testimony of appellees’ witnesses expressing their opinions as to the value of the stolen property is susceptible of conflicting inferences as to whether the values assigned in the proof of loss represent the replacement cost of the property based upon the retail price of new comparable property at the time of loss, or whether such values represent the actual cash or market value of the property at the time of the loss, taking into account depreciation and the condition of the property at that time.
Such conflicting inferences being sufficient to lead the minds of impartial jurors to different conclusons, they create a genuine issue of fact which may be resolved only by trial, and not by the court in response to a motion for summary judgment.[3] It is my view that because of the different conclusions as to the value of the property whch might be drawn from the testimony of appellee’s witnesses, the summary judgment appealed should be affirmed only on the issue of liability about which there is no dispute, but reversed and a trial ordered as to the issue of damages.
The only authority cited by the majority opinion in support of its conclusion is the case of New York Central Mutual Fire Ins. Co. v. Diaks [4] in which the Supreme Court held that an acceptable method of evaluating insured property destroyed by fire was by establishing its replacement cost less depreciation and salvage. How this decision can be held to support the ruling of the majority in the case sub judice escapes me. This is that exact rule of law contended for by appellant on this appeal. The evidence in the record is susceptible of the inference that the replacement cost of the property insured by appellant’s policy, less depreciation and salvage, would be substantially less than the total amount reflected by the proof of loss which was accepted by the trial judge in rendering the summary judgment appealed. In the Diaks case the insured’s evidence was submitted to the jury who relied upon the evidence *42 of replacement cost less depreciation and salvage as representing the cash value of the destroyed property, and rendered its verdict accordingly. In rendering the summary judgment appealed the trial court substituted itself for the jury and arrived at its conclusion by performing the same function as that performed by the jury in Diaks.
The majority opinion appears to attach much importance to the fact that appellant offered no evidence in opposition to the the motion for summary judgment calculated to refute the value of the stolen property as reflected in appellees’ proof of loss. The majority seem to assume that because of this, appellant has no standing to question appellees’ claim and should be bound by the proof of loss even though one view of the evidence before the court could reasonably lead a jury to a different conclusion. Ths is the precise position taken by the Third District Court of Appeal which was rejected and quashed by the Supreme Court in Holl v. Talcott.[5] In the Holl decision the Supreme Court said:
“ * * * As this court and other appellate courts have repeatedly held, the burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met this burden, the opposing party is under no obligation to show that issues do remain to be tried. Humphrys v. Jarrell, supra; Matarese v. Leesburg Elks Club, supra; and Harvey Building, Inc. v. Haley, Fla.1965, 175 So.2d 780.
“This means that before it becomes necessary to determine the legal sufficiency of the affidavits or other evidence submitted by the party moved against, it must first be determined that the mov-ant has successfully met his burden of proving a negative, i. e., the nonexistence of a genuine issue of material fact. Matarese v. Leesburg Elks Club, supra. He must prove this negative conclusively. The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. Harvey Building, Inc. v. Haley, supra.
* * * * * *
“The rule simply is that the burden to prove the non-existence of genuine triable issues is on the moving party, and the burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden.”
For the foregoing reasons I am of the view that the summary judgment reviewed herein was improvidently entered and should be reversed.

. New York Central Mutual Fire Ins. Co. v. Diaks, (Fla.1954) 69 So.2d 786, 788.

. Baskin v. Griffith (Fla.App.1961) 127 So.2d 467; Fish Carburetor Corporation v. Great American Insurance Co. (Fla.App.1961) 125 So.2d 889.

. New York Central Mutual Fire Ins. Co. v. Diaks, supra note 2.

. Holl v. Talcott (Fla.1966) 191 So.2d 40, 43, 44.