H J HEINZ COMPANY, INC v DEPARTMENT OF TREASURY

Docket No. 126707. Submitted April 9, 1992, at Lansing. Decided December 7, 1992, at 9:15 A.M.

H.J. Heinz Company, Inc., brought an action in the Court of Claims against the Department of Treasury after the department refused the plaintiff's request for a refund of single business taxes paid with regard to alleged sales involving the purchase and sale of certain securities through repurchase agreements. The plaintiff's major lines of business are other than the sale of securities, and the transactions at issue involved the daily transfer of excess money to a financial institution in return for securities that actually never changed hands. The next day, the money, plus interest, would be returned to the plaintiff and the securities would be returned to the financial institution. The plaintiff could retrieve the securities and sell them to third parties only if the financial institution failed to repurchase them pursuant to the agreement, which never happened. The court, Michael G. Harrison, J., ruled that the transactions were not sales as defined by the Single Business Tax Act, MCL 208.1 et seq.; MSA 7.558(1) et seq., and dismissed the action. The plaintiff appealed.

The Court of Appeals held:

The repurchase transactions are collateralized loans and do not constitute sales pursuant to the Single Business Tax Act.

Affirmed.

TAXATION — SINGLE BUSINESS TAX ACT — SECURITIES — REPURCHASE AGREEMENTS — SALES.

A transaction in which a business, whose major lines of business are other than the sale of securities, invests its excess money with a financial institution and receives certain securities that actually never change hands and the financial institution, pursuant to a repurchase agreement, returns the money, plus interest the following day and receives the securities back is not a sale within the meaning of the Single Business Tax Act;

REFERENCES

Am Jur 2d, State and Local Taxation §§ 576, 577.

See the ALR Index under Taxes.

such transactions should not be included in computing the sales factor of the apportionment formula used to determine the tax base of the business (MCL 208.7[1]; MSA 7.558[7][1]).

*Howard & Howard* (by *Patrick R. Van Tiflin* and *Todd D. Chamberlain*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Russell E. Prins, Terry P. Gomoll,* and *Richard R. Roesch,* Assistant Attorneys General, for the defendant.

Before: REILLY, P.J., and HOLBROOK, JR., and MARILYN KELLY, JJ.

MARILYN KELLY, J. This case involves an interpretation of Michigan's Single Business Tax Act (SBTA) for the purpose of determining whether certain arrangements known as "repo" transactions are "sales" as defined under the act. MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.* Plaintiff appeals as of right from an order of the Court of Claims which ruled that the transactions in question were not sales, thus denying plaintiff requested tax refunds. On appeal, plaintiff again argues that its repo transactions constituted sales under the act. We disagree and affirm.

I

Plaintiff is a Pennsylvania corporation doing business in over thirty-five states, including Michigan. It operates a pickle processing plant in Holland, Michigan. In 1988, after recharacterizing its repo transactions as sales, plaintiff filed amended single business tax returns seeking refunds for the tax years 1984 through 1987. The alleged sales arose from the "purchase" of securities, certificates of deposit and commercial paper through repurchase (repo) agreements.

At the beginning of each business day, plaintiff's Cash Administrator, who worked in its Money and Banking Department, determined the cash needs of the company for that day. In the event of excess cash, the Cash Administrator contacted various financial institutions to determine which offered the highest yield. Then, the company's excess funds were wired to the institution offering the highest yield. The next day, the institution wired the funds back to plaintiff's account along with the previous day's earnings on them. The wireback was done automatically, without further contact from plaintiff. The securities, themselves, never changed hands.

II

The single business tax is a form of value-added tax which imposes a tax on the value added to a product at each step of its production and distribution. *Trinova Corp v Treasury Dep't,* 433 Mich 141, 149; 445 NW2d 428 (1989), aff'd 498 US —; 111 S Ct 818; 112 L Ed 2d 884 (1991). When calculating tax liability under the SBTA, a taxpayer must apportion its tax base according to the amount of activity it conducts inside as contrasted with outside the state. MCL 208.41; MSA 7.558(41). The tax base is the taxpayer's business income before apportionment. MCL 208.9(1); MSA 7.558(9)(1). The tax base is apportioned to Michigan by multiplying the tax base by:

$$\frac{\text{Michigan Property}}{\text{Total Property}} + \frac{\text{Michigan Payroll}}{\text{Total Payroll}} + \frac{\text{Michigan Sales}}{\text{Total Sales}}$$

$$\overline{\phantom{XXXXXXXXXXXXXXXX}\ 3\ \phantom{XXXXXXXXXXXXXXXX}}$$

MCL 208.45(1); MSA 7.558(45)(1). If the taxpayer's

total sales increase, and the other factors remain constant, the taxpayer will owe less in single business taxes. See MCL 208.46; MSA 7.558(46); MCL 208.49; MSA 7.558(49); MCL 208.51; MSA 7.558(51).

A "sale" under the SBTA is defined as

> the gross receipts arising from a transaction or transactions in which gross receipts constitute consideration: (a) for the transfer of title to, or possession of, property that is stock in trade or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax period or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business, or (b) for the performance of services, which constitute business activities other than those included in (a), or from any combination of (a) or (b). [MCL 208.7(1); MSA 7.558(7)(1).]

## III

In this case, when plaintiff amended its single business tax returns, it increased its total sales by denominating its repo transactions as sales rather than as interest bearing investments. Plaintiff's amended returns increased the total sales factor by the entire amount of the repo transaction, which includes the return of capital and interest. These calculations resulted in a lower apportionment percentage attributable to Michigan.

The trial court ruled that the repo transactions did not involve stock in trade held by plaintiff primarily for sale to customers in the ordinary course of its business. In fact, the gain received from the transactions arose from plaintiff's attempts to avoid holding idle cash. The court recognized that plaintiff had created a profitable De-

partment of Money and Banking. However, the department was formed for astute business operation, not for the sale of securities.

On appeal, plaintiff argues that the transactions in question involved the use of stock in trade. It asserts that the repo transactions were not merely collateralized loans but sales. It points out that express contractual language in the repurchase agreements or confirmation letters clearly established that plaintiff owned the securities. They contained such indicia of ownership as being alienable and vesting title and the risk of loss in plaintiff.

IV

We recently ruled in a case factually similar that receipts from the redemption and sale of certificates of deposit and other securities do not constitute sales under the SBTA. *USX Corp v Treasury Dep't,* 187 Mich App 256; 466 NW2d 294 (1991). In *USX,* the plaintiff "purchased" investment securities including certificates of deposit, commercial paper, stocks and bonds. The securities were acquired from those who issued them, then redeemed or resold to banks or investors. *Id.,* 258.

In *USX,* we indicated there was insufficient evidence to categorize these transactions as sales. The trial court found that the plaintiff was neither in the business of selling securities to third parties nor licensed or registered as a dealer in marketable securities. The plaintiff's major lines of business were other than the sale of securities. The only evidence presented showed that the plaintiff was purchasing and selling securities for its own account. *Id.*

Plaintiff in this case admits that the facts underlying *USX* and this case are similar. In both, the

alleged sales occurred soon after the alleged purchases. Plaintiffs' major lines of business were other than the sale of securities. Each created a department dealing only with the investment of excess cash. One distinction in this case is that the alleged sales frequently were evidenced by a repurchase agreement requiring the sellers to repurchase identical securities at a later specified date. In *USX,* the plaintiff had no such commitment.

Some of the repurchase agreements or confirmation letters stipulated as exhibits in this case identified the transactions in issue as purchases and sales. One confirmation letter stated that plaintiff had the same rights as the seller in the securities. However, we must consider the real nature of the transactions without regard to the terms applied to them by the parties. *Central Discount Co v Revenue Dep't,* 355 Mich 463, 467; 94 NW2d 805 (1959).

Unlike the plaintiff in *USX,* plaintiff in this case could not sell the securities to third parties. It could retrieve them and sell them on the market only if the financial institutions where it invested failed to reacquire the securities at maturity pursuant to the repurchase agreements. The financial institutions never failed to reacquire the securities.

We agree with those courts which classify repo transactions as collateralized loans rather than purchases and sales. See *Hammond Lead Products, Inc v Indiana Tax Comm,* 575 NE2d 998 (Ind, 1991); *Massman Construction Co v Director of Revenue, State of Missouri,* 765 SW2d 592 (Mo, 1989). We disagree with plaintiff that *Matz* should control our decision. *Matz v Treasury Dep't,* 155 Mich App 778; 401 NW2d 62 (1986). *Matz* is clearly distinguishable from this case; it did not involve the short term investment of excess daily

cash. *Matz* stands for the proposition merely that income from government securities flows through mutual funds to the original investors. *Id.*

Our classification of plaintiff's repo transactions as collateralized loans not sales is consistent with our ruling in *USX*. We find no reason to treat the transactions in this case differently from those in *USX*. Therefore, we conclude that the trial court did not err in ruling that plaintiff's repo transactions did not fall within the definition of sales under the SBTA.

Affirmed.