FORD CREDIT INTERNATIONAL, INC v
DEPARTMENT OF TREASURY

Docket No. 258389. Submitted March 8, 2006, at Lansing. Decided April
4, 2006, at 9:20 a.m.

Ford Credit International, Inc., brought an action in the Court of
Claims against the Michigan Department of Treasury, seeking a
single business tax refund and a determination that the nonrepa-
triated earnings of a wholly owned foreign subsidiary need not be
reported as gross receipts for the purposes of MCL 308.31(2) of the
Single Business Tax Act, which allows the tax to be based on 50
percent of gross receipts if that amount is smaller than the
adjusted tax base under the ordinary method of calculation, even
though such earnings were deemed dividends received by the
parent corporation in accord with the Internal Revenue Code
(IRC), 26 USC 1 *et seq.* The defendant had determined that the
earnings were deemed dividends and were to be included in gross
receipts for purposes of the single business tax. The court, William
E. Collette, J., granted summary disposition for the defendant,
concluding that, because the single business tax is a value-added
tax, it requires the inclusion of all business activity to achieve an
accurate measure of tax liability, that "gross receipts," as used
MCL 208.31(2), includes deemed dividends reported to the Inter-
nal Revenue Service, and that the defendant's calculation of gross
receipts to include deemed dividends did not discriminate against
foreign business activity because all dividends are included in
gross receipts. The plaintiff appealed.

The Court of Appeals *held*:

The Court of Claims erred when it held that "gross receipts"
included deemed dividends. The very word "receipts" denotes an
amount or quantity received. MCL 208.10(4) specifically refers to
"gross receipts" as "income." Unpaid dividends from a foreign
subsidiary are not a part of a parent corporation's income until it
is distributed as a dividend to that parent corporation. The IRC
recognizes that its inclusion of a foreign subsidiary's revenue in a
domestic corporation's gross income is an accounting fiction
rather than a fiscal reality. 26 USC 78. Because the SBTA did not
define "dividend," the defendant must rely on the IRC definition,

26 USC 316, which defines "dividend" as "any distribution of property made by a corporation to its shareholders . . . ." The plaintiff has demonstrated that its subsidiaries did not actually distribute the amount of deemed dividends. The deemed dividends are not to be included in gross receipts for purposes of calculating the plaintiff's single business tax liability for the years at issue, and the plaintiff is entitled to the refund it claimed.

Reversed.

TAXATION — SINGLE BUSINESS TAX — NONREPATRIATED FOREIGN SUBSIDIARY EARNINGS — GROSS RECEIPTS.

Nonrepatriated earnings retained by a foreign subsidiary of a domestic corporation are not dividends that must be included in gross receipts for purposes of calculating the parent corporation's single business tax liability under the provision of the Single Business Tax Act that allows the parent corporation to apply the single business tax rate to 50 percent of its gross receipts if that amount is smaller than the adjusted tax base under the ordinary method of calculation (26 USC 316; MCL 208.2[2], 208.31[2]).

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Samuel J. McKim, III*; and *Joanne B. Faycurry*), for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General and *Glenn R. White*, Assistant Attorney General, for the defendant.

Before: SMOLENSKI, P.J., WHITBECK, C.J., and O'CONNELL, J.

O'CONNELL, J. Plaintiff appeals as of right an order granting summary disposition for defendant. We reverse. This case concerns the application of the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, to foreign subsidiary, nonrepatriated earnings that the Internal Revenue Code (IRC), 26 USC 1 *et seq.*, requires plaintiff to report as dividends on its federal income tax returns.

Plaintiff is an international financing company that controls several separate financing corporations in for-

eign countries. On its federal tax returns in tax years 1994, 1995, and 1996, plaintiff reported over $500 million that its foreign subsidiaries had earned, but had not distributed to plaintiff. Various provisions of the IRC require plaintiff to include the revenues of foreign subsidiaries as dividend income, even if the subsidiaries never actually distributed any money as a dividend.[1] In these years, plaintiff also calculated its adjusted tax base for purposes of Michigan's SBTA.

After calculating its adjusted tax base, however, plaintiff took advantage of a special provision in the SBTA that saves smaller businesses with low cash flow from paying the full amount of their ordinary tax liability. MCL 208.31(2). The SBTA is designed to create a tax "upon the privilege of doing business and not upon income." MCL 208.31(3). Because the SBTA taxes the value added by a business, some businesses that run at a loss may face the anomalous predicament of still owing taxes. *Stockler v Dep't of Treasury*, 75 Mich App 640, 651-652; 255 NW2d 718 (1977). According to defendant, MCL 208.31(2) was implemented to safe-guard smaller businesses that have meager gross incomes and require a large portion of the money they bring in just to sustain operations. Under MCL 208.31(2), if 50 percent of a business's "gross receipts" does not exceed the business's adjusted tax base using the ordinary method of calculation, the provision allows the business to subtract the overage from the adjusted tax base, making it equal to 50 percent of "gross receipts." The business may then use the new, reduced adjusted tax base to calculate its tax. *Id.* In other words,

---

[1] The trial court accurately referred to these earnings as "subpart F" and "foreign gross-up" amounts, but for our purposes the earnings were "deemed," rather than actual, dividends, so we refer to them collectively as deemed dividends.

under MCL 208.31(2), a business only needs to apply the SBTA tax rate to 50 percent of its "gross receipts" if that amount is smaller than the adjusted tax base it initially calculates.

During the years in question, the amount of plaintiff's actual dividends and earnings from in-state activity were small compared to its adjusted tax base. Without including the undistributed earnings of its foreign subsidiaries from its calculation of "gross receipts," plaintiff reported to defendant that its adjusted tax base under the ordinary method was more than 50 percent of its "gross receipts" for these years. Simply put, it applied the remedial provision in MCL 208.31(2), reduced its adjusted tax base to equal half of its "gross receipts" calculation, and used the new adjusted tax base to calculate its tax.[2]

Defendant audited plaintiff and notified plaintiff in 1999 of a tax deficiency. Defendant determined that in the relevant tax years plaintiff should have included the deemed dividends it reported on its federal returns in its calculation of "gross receipts." Defendant determined that if plaintiff had correctly included the deemed dividends, 50 percent of plaintiff's "gross receipts" would not have been less than its original adjusted tax base it calculated, making plaintiff ineligible to reduce its adjusted tax base under MCL

---

[2] This explanation of the facts tracks plaintiff's actions from a legal perspective. From the perspective of an accountant, plaintiff probably took the gross income it reported on its federal return, deducted the amount it claimed in deemed dividends from its foreign subsidiaries, and immediately realized that 50 percent of the remainder would not amount to its adjusted tax base. Next, it simply multiplied 50 percent of the gross receipts by the tax rate and reported that amount as its tax. Although the parties spend a substantial amount of time and energy distinguishing between the perspectives, the result is the same: an amount equal to 50 percent of the business's "gross receipts" is taxed.

208.31(2). According to defendant's calculations using the original adjusted tax base for all three years, plaintiff underpaid its taxes by $549,801.37, including interest. Plaintiff paid the additional tax and interest assessed under protest and then sued for a refund.

Plaintiff claimed that defendant misapplied the SBTA and that its treatment of the deemed dividends as actual dividends violates the constitutional ban on discrimination against foreign commerce. The trial court found that the SBTA is essentially a value-added tax that requires inclusion of all business activity to achieve an accurate measure of tax liability. Therefore, it held that the phrase "gross receipts" in MCL 208.31(2) necessarily includes deemed dividends reported to the Internal Revenue Service. The trial court also found that defendant's calculation of gross receipts did not discriminate against foreign business activity, because all dividends are included in gross receipts without partiality to any particular kind of dividend. The court also gave credence to defendant's argument that plaintiff was not directly taxed on the deemed dividends, they merely disqualified plaintiff from the privilege of reducing its adjusted tax base.

On appeal, plaintiff argues that the trial court erred when it held that the phrase "gross receipts" included deemed dividends. We agree. "This Court reviews de novo the issue of statutory interpretation because it is a question of law. Review de novo is also appropriate because the Court of Claims decided this issue on plaintiff's motion for summary disposition." *Manske v Dep't of Treasury*, 265 Mich App 455, 457; 695 NW2d 92 (2005) (citations omitted).

As an initial matter, the SBTA clearly states, "A term used in this act and not defined differently shall have the same meaning as when used in comparable context

in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required." MCL 208.2(2). During the period covered by this appeal, "gross receipts" was not a vague phrase, or an all-encompassing one.[3] Rather, the phrase was explicitly defined as "the sum of sales . . . and rental or lease receipts." MCL 208.7(3) (subsequently expanded by 2000 PA 477). A careful reader will notice that the definition, at least in the relevant tax years, did not include dividends of any type.

However, defendant argues, and plaintiff agrees, that the phrase "gross receipts" includes dividends and interest of financial organizations in accordance with the Tax Tribunal opinion in *Genesee Merchants Bank and Trust Co v Dep't of Treasury*, MTT Docket Nos. 35057, 35058 (1979). The parties also agree that plaintiff is a financial organization under the SBTA, so *Genesee Merchants* applies here. Facing a similar challenge to the inclusion of dividends in a business's gross receipts, the tribunal in *Genesee Merchants* held that the Legislature must have intended financial organizations to include dividends in their calculation of "gross receipts," because the SBTA defines a "financial organization" as "a bank . . . or corporation at least 90% of whose assets consist of intangible personal property and at least 90% of *whose gross receipts income consists of dividends* or interest or other charges resulting from the use of money or credit." MCL 208.10(4) (emphasis added). We need not and do not address the wisdom of this decision here, and we include the tribunal's rationale and longstanding policy only to develop the back-

---

[3] A later amendment, 2000 PA 477, expanded the phrase "gross receipts" to mean "the entire amount received by the taxpayer from any activity whether in intrastate, interstate, or foreign commerce . . . ."

ground for the case at hand. The parties do not dispute the validity or applicability of *Genesee Merchants* to plaintiff's *received* dividends.

Instead, plaintiff's issue is with the application of *Genesee Merchants* to its *deemed* dividends, the amount of revenue generated and *retained* by plaintiff's foreign subsidiaries. These revenues, which are required by the IRC to be reported on plaintiff's federal income tax return, have not been, and may never be, received by plaintiff. Plainly put, plaintiff claims that defendant is essentially taxing it, or at least depriving it of a tax benefit, on the basis of income that it never actually received. Plaintiff notes that part of the reason the IRC treats these revenues more harshly is to discourage foreign commerce in favor of domestic investment. Plaintiff argues that by using the IRC's legitimate but discriminatory calculation of gross income to determine "gross receipts," defendant indirectly and unconstitutionally adds to the discrimination against foreign commerce. It correctly argues that if the subsidiaries were domestic corporations, then plaintiff would not automatically receive "deemed dividends" in the form of the domestic corporation's revenue and would not report any dividends as income until they were actually distributed. Plaintiff argues that this use of deemed dividends also extends the reach of the SBTA to business activity occurring entirely outside the United States, contrary to MCL 208.3(2).

In response, defendant claims that the tax is actually based on the adjusted tax base, not on 50 percent of gross receipts per se, so the fact that "gross receipts" includes foreign deemed dividends does not make the SBTA itself discriminatory.[4] Defendant argues that

---

[4] In fact, defendant correctly points out that all dividends, received or deemed received, foreign or domestic, are deducted from the computation of a business's adjusted tax base. MCL 208.9(7)(a).

plaintiff is really complaining about its disqualification for an exception to the general tax, and that the Legislature has the authority to grant or deny tax relief based on the total income, or "gross receipts," attributable to a business no matter where that income comes from or what accounting measures the IRC uses to compute it. Plaintiff claims that the use of an objective standard, such as total income, to determine whether tax relief is warranted dispels any possibility of discriminating against an out-of-state business. Again, we need not and do not reach this complex, but interesting, issue. Instead, it is enough for our analysis that there are three strong statutorily based reasons to exclude the IRC's deemed dividends from the SBTA's computation of "gross receipts." The first is the very word "receipts," which denotes "the amount or quantity received." *Random House Webster's College Dictionary* (2001). Although we are not prepared to eliminate every possible accounting practice from the scope of the phrase, the use of the word "receipts" strongly suggests that the Legislature only intended to include within it the money a business *actually receives*, rather than any amount merely *attributable* to it. The second reason arises from the statutory language on which the tribunal in *Genesee Merchants* relied to justify including dividends in "gross receipts." The statute expressly refers to the "gross receipts" as "income," and seemingly places "dividends" in the category of "charges resulting from the use of money or credit." MCL 208.10(4). Whatever the revenue of a foreign subsidiary may be, it is not a parent corporation's income in any real sense until it is distributed as a dividend, and it certainly is also not a charge for the use of money. Finally, and most persuasively, even the IRC recognizes that its inclusion of a foreign subsidiary's revenue in a domestic parent corporation's gross income is an ac-

counting fiction rather than a fiscal reality. See 26 USC 78. The IRC defines a dividend, in general, as "any distribution of property made by a corporation to its shareholders . . . ." 26 USC 316. By relying on the IRC to define any terms that the SBTA does not define for itself, the SBTA has adopted this definition of "dividend." MCL 208.2(2). Because plaintiff has demonstrated that its subsidiaries did not actually distribute the amount of deemed dividends in the relevant tax years, they were not actual dividends for SBTA purposes and are not part of plaintiff's "gross receipts" for those years. It follows that plaintiff was eligible for the reduction of its adjusted tax base, and it is entitled to the refund it claims.

Reversed.