# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALTICOR INC,

        Plaintiff-Appellant/Cross Appellee,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee/Cross
        Appellant.

UNPUBLISHED
February 9, 2016

No.  323350
Court of Claims
LC No.  12-000139-MT

---

Before:  RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

This case arises under the Michigan Single Business Tax Act[1] ("SBTA") and involves a final order from the Court of Claims requiring defendant to issue a tax refund to plaintiff in the amount of $533,271.00 plus interest.  Plaintiff appeals as of right, contending that the refund should have been greater because certain payments from subsidiaries for shared employee services were improperly characterized as "sales."  Defendant cross-appeals arguing that certain payments from a subsidiary pursuant to a license for use of a customer list were erroneously characterized as "royalties," rather than "sales," and were therefore not used in calculating plaintiff's tax base.  We affirm.

Plaintiff is a worldwide direct marketing company that manufactures, markets, and sells a variety of consumer products through Independent Business Owners (IBOs).  During the years at issue, plaintiff was also the parent company of numerous subsidiaries.  Plaintiff shared certain employees and their services with its subsidiaries; the shared employees performed tasks related to human resources, finance, legal services, and accounting.  The subsidiaries paid a proportionate amount of the shared employees' salary by way of a credit to plaintiff.  Plaintiff refers to this method of payments by the affiliates to plaintiff for the shared employees as a "cash pooling system."

Defendant audited plaintiff's Single Business Tax ("SBT") returns from September 1999 to August 2004, and plaintiff subsequently filed a complaint in the Court of Claims and a motion

---

[1] The SBTA, MCL 208.1 *et seq*. was repealed by 2006 PA 325, effective December 31, 2007.

for summary disposition, asserting that, following the audit, defendant made improper adjustments to its SBT returns. At issue was whether the reimbursement by the subsidiaries for shared employees qualified as "sales" under the SBTA, and whether payments plaintiff received from a subsidiary, Quixtar, Inc., pursuant to a license for the use of plaintiff's list of IBOs should be construed as royalties. The trial court issued an opinion and order granting the motion for summary disposition in part and denying it in part. The court concluded that payments received by plaintiff from its affiliates for services rendered by shared employees were "sales" for the purpose of the SBTA. However, the trial court agreed with plaintiff that the payments received from Quixtar for use of the customer list were royalties within the meaning of the SBTA, and that they were properly deducted from plaintiff's tax base. Both plaintiff and defendant appeal the trial court's order.

First, we address plaintiff's argument the trial court erred because the reimbursements for services rendered by the shared employees were not sales. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court also reviews de novo questions of statutory interpretation. *Green Oak Twp v Munzel*, 255 Mich App 235, 238; 661 NW2d 243 (2003).

The audit period at issue covered September 1999 to August 2004. Prior to January 1, 2001, the SBTA defined "sales" as follow:

> "Sale" or "sales" *means the gross receipts arising from a transaction or transactions in which gross receipts constitute consideration*: (a) for the transfer of title to, or possession of, property that is stock in trade or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax period or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business, or (b) *for the performance of services, which constitutes business activities* other than those included in (a), or from any combination of (a) or (b). [1982 PA 376 (emphasis added).]

After January 1, 2001, MCL 208.7(1)(a) defined sales in pertinent part as follows:

> "Sale" or "sales" means the *amounts received by the taxpayer as consideration* from the following:

> (*i*) The transfer of title to, or possession of, property that is stock in trade or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax period or property held by the

-2-

taxpayer primarily for sale to customers in the ordinary course of its trade or business.

(*ii*) *The performance of services, which constitute business activities* other than those included in subparagraph (i), or from any combination of business activities described in this subparagraph and subparagraph (i). [2000 PA 477 (emphasis added).]

Thus, as the trial court explained, under either definition of "sales" in MCL 208.7, a sale of services required: (1) that an amount be received; (2) that the amount constitute consideration; and (3) that the consideration be for the performance of services, which constitute business activities. The parties do not dispute this construction of the statutory definition.

In regard to the first element, whether an amount was received, we agree with the trial court that the reimbursements qualified as an amount received by plaintiff. Plaintiff argues that the receipts were merely a bookkeeping entry to record the pass-through payment of employees and did not constitute actual receipts pursuant to *Ford Credit Int'l Inc v Dep't of Treasury*, 270 Mich App 530; 716 NW2d 593 (2006). However, the trial court persuasively distinguished the facts of this case from *Ford Credit Int'l*. In *Ford Credit Int'l*, this Court was persuaded that dividends that were merely "deemed" to have been received but were not actually paid to the taxpayer were not receipts under the SBTA. *Id*. at 538. The Court reasoned that the deemed dividend was not a receipt because the internal revenue code recognized that it was "an accounting fiction rather than a fiscal reality." *Id*. at 537-538. The Court also noted that the word "receipts" denoted "the amount or quantity received." *Id*. at 537, quoting *Random House Webster's Collegiate Dictionary* (2001). Thus, the Court explained, the word "receipts" "strongly suggests that the Legislature only intended to include within it the money a business *actually receives* rather than any amount merely *attributable* to it." *Id*. However, as the trial court here noted, the current case does not deal with accounting fictions; the amounts at issue were recorded in plaintiff's books and represented the actual obligation of the affiliates that had to be satisfied. Accordingly, we are not convinced by plaintiff's argument in this regard.

Plaintiff also asserts that the cash pooling system with its subsidiaries did not create a true debt between plaintiff and its subsidiaries. To support its contention, plaintiff relies on a decision of the Massachusetts Appellate Tax Board. "Caselaw from other states is not binding on this court, but may be 'instructive' and used as a guide." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 533; 847 NW2d 657 (2014). While we may adopt the reasoning of caselaw from other states, we are not compelled to adopt the reasoning from this Massachusetts case because it applies factors derived from Massachusetts law that are not directly connected to the definition of "sales" as laid out in the Michigan SBTA.

In regard to the second element, we conclude that the amounts received by plaintiff were consideration. Plaintiff attempts to distinguish between consideration and reimbursement, arguing that the amounts received were reimbursement rather than consideration because there was no profit. The SBTA does not define consideration; therefore, it is proper to rely on dictionary definitions. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). The word "consideration" is defined as "[s]omething of value (such as an act, a forbearance, or a return promise) received by a promisor from a promisee." Black's Law Dictionary (7th ed).

-3-

Additionally, our Supreme Court defined "consideration" to require "a benefit on one side, or a detriment suffered, or service done on the other." *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 239; 644 NW2d 734 (2002) (citation omitted). As determined by the trial court, there was consideration because plaintiff received payment by way of a debit from the affiliate's account in exchange for services provided by the shared employees. The fact that the service was provided at cost is not relevant because no definition of consideration requires that the underlying transaction or exchange must result in a profit.

Finally, in regard to the third element, we agree with the trial court that the reimbursements were for the performance of business activities as defined by the SBTA. To qualify as a sale, the consideration must be received for the performance of services that constitute business activities. The SBTA defines "business activities" to include, in relevant part, "the performance of services . . . with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, but shall not include the services rendered by an employee to his employer . . . ." MCL 208.3(2). Plaintiff contends that the services it provided to its affiliates were not business activities because they were not done with the object of gain as evidenced by the fact that the services were provided at cost. However, the trial court pointed out that plaintiff provided the services and ultimately benefited because it alleviated the need for plaintiff's affiliates to hire employees to provide duplicative services. This would indirectly benefit plaintiff's own bottom line, and the SBTA provides that the gain or benefit from the service can be "direct or indirect, to the taxpayer or to others. . . ." MCL 208.3(2). Additionally, because the gain or benefit can accrue to others, the services could be a business activity because the affiliates benefited from the shared employee services in that they did not have to hire full-time employees. Accordingly, we agree with the reasoning and conclusion of the trial court.

Plaintiff points out that the definition of "business activities" specifically excludes "services rendered by an employee to his employer." MCL 208.3(2). Plaintiff contends that pursuant to *Kaiser Optical Sys, Inc v Dep't of Treasury*, 254 Mich App 517; 657 NW2d 813 (2002), a parent company's shared employees performing accounting services for an affiliate are the business activities of the affiliate, not the parent. However, we are not convinced that *Kaiser* stands for the proposition claimed by plaintiff. In *Kaiser*, an affiliate corporation based in Michigan reimbursed its parent company for the services that the parent's accounting staff in California regularly rendered to the affiliate. *Id*. at 519. At issue in *Kaiser* was whether the affiliate had established a sufficient nexus with the State of California for tax purposes. *Id*. at 521-522. The Court ultimately held that the affiliate had established a sufficient nexus with California, declining to hold that the parent company was the actual employer of the shared employees because the facts did not establish that the affiliate had no right to control the shared employees. *Id*. at 524. While *Kaiser* held that the shared employees' services were made to the affiliates, it did not contemplate the impact on the parent company or the tax considerations arising regarding the parent company. While the basic factual scenario in *Kaiser* is similar to that presented here, the issue and law being applied were distinct. Plaintiff's attempts to apply *Kaiser* are, in our opinion, far too extenuated to apply convincingly in this matter. Thus, we are not convinced that the holding in *Kaiser* conclusively establishes that the reimbursements did not constitute business activities pursuant to MCL 208.3(2).

In addition, plaintiff's argument that the reimbursements were not an amount received or a receipt because they did not generate profit is unavailing. Plaintiff cites *PM One, Ltd v Dep't*

*of Treasury*, 240 Mich App 255, 279; 611 NW2d 318 (2000), for the proposition that reimbursement of costs paid for with another's money do not constitute gross receipts under the SBTA. While *PM One* bears some semblance to the case at bar, there are important distinctions that make plaintiff's comparison inapt. In *PM One*, a management company managed properties on behalf of clients, and it sometimes retained third-party contractors to furnish goods or services to maintain the properties. *Id*. at 259. The management company paid the third-party contractors by transferring money from its client's account to a central depository account ("CDA"), and it then issued a check for the same amount from the CDA to the contractor. *Id*. The Court held that the reimbursements from the clients to the management company for payment of third-party contractors were not the company's sales under the SBTA because the company "neither provided the disputed goods and services nor received or otherwise owned the consideration that flowed through the CDA from the individual client's depository account to the third-party vendors." *Id*. at 265. *PM One* dealt with the agency exclusion of the SBTA which provides that gross receipts do not "include the amounts received in an agency or other representative capacity solely on behalf of another or others . . . ." *Id*. at 268, quoting MCL 208.7(3).

The case at bar is distinguishable from *PM One*. Here, plaintiff's own employees are "shared employees" with plaintiff's subsidiaries; they are not third-party contractors or vendors. Thus, plaintiff is in some way providing the services that its employees render on behalf of plaintiff's subsidiaries. Additionally, plaintiff owns the consideration that flows to it as a result of the subsidiaries rendering payment for the services. Unlike in *PM One*, plaintiff did not receive the money "solely on behalf" of the shared employees "because of an express agency relationship." *Id*. at 269. There is no indication that the shared employees have an express agency relationship with plaintiff for the purpose of accepting payment from the subsidiaries. Further, the agency exception under the SBTA does not apply in this case because gross receipts do include "amounts received by persons having the power or authority to expend or otherwise appropriate such amounts *in payment for or in consideration of sales or services made or rendered by themselves or by others acting under their direction and control . . . .*" *Id*. at 268, quoting MCL 208.7(3). Here, plaintiff received payment in consideration of services rendered by the shared employees, who were arguably under plaintiff's direction and control. Thus, the agency exception does not apply and the amounts received were receipts.

Like the trial court, we further reject plaintiff's assertion that the services it provided to its affiliates do not constitute business activities because they do not represent plaintiff's primary business. To support this proposition, plaintiff relies on *USX Corp v Dep't of Treasury*, 187 Mich App 256; 466 NW2d 294 (1990) and *HJ Heinz Co v Dep't of Treasury*, 197 Mich App 210; 494 NW2d 850 (1992). Both cases are distinguishable and inapplicable for the same reasons articulated by the trial court in that they involved sales in the context of the transfer of property rather than services. Most importantly, the resolution of those cases turned on whether the property was "stock in trade or other property" that would be "properly included in the inventory of the taxpayer . . . or held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business." MCL 208.7(1)(a)(*i*). Thus, those cases addressed sales under the SBTA in the context of property, rather than the sale of services, which are involved in this case. As the trial court noted, MCL 208.7 does not require a sale of services to be derived from a service that constitutes the taxpayer's main line of business. The parties' arguments

about what constitutes plaintiff's main line of business are immaterial because plaintiff's line of business is irrelevant when determining whether the services it provided were a business activity.

Plaintiff's argument that the Court should "harmonize" statutory subsections that deal with the word "sales" is unfounded and contrary to the rules of statutory interpretation. In interpreting a statute, the fundamental task of a court is to "discern and give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). Here, the Legislature created two distinct definitions to define the sale of property and the sale of services. MCL 208.7(1)(a)(*i*) and (*ii*). To combine or otherwise "harmonize" these definitions would negate the Legislature's manifest intent that the definitions should be different.

Plaintiff's argument that the treatment of transactions under federal tax law should control is also unpersuasive. Plaintiff correctly argues that the SBTA states that "[a] term used in this act *and not defined differently* shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required." MCL 208.2(2) (emphasis added). However, as defendant points out, Michigan's SBTA has its own definition of "sales" under MCL 208.7. Thus, Michigan's definition of "sales" controls. Plaintiff cites cases from other states for the proposition that amounts not classified as sales for federal tax purposes are not sales for the purpose of state tax apportionment. "Caselaw from other states is not binding on this court, but may be 'instructive' and used as a guide." *Wells Fargo Bank*, 304 Mich App at 533. Aside from its non-binding nature, cases from other states are not persuasive to the extent that they deal with the specific tax law of other states rather than Michigan's tax law and definition of sales.

Finally, plaintiff's argument that the trial court's decision represents bad tax policy that this Court should avoid is not availing. As defendant points out, the responsibility for the justice or wisdom of legislation rests with the Legislature, and the Court construes rather than makes the law. *Boyer-Campbell Co v Fry*, 271 Mich 282, 299-300; 260 NW 165 (1935). Accordingly, all of plaintiff's arguments on appeal are rejected. The reimbursements paid by affiliates were properly qualified as sales under the SBTA. Accordingly, the trial court did not err in denying plaintiff's motion for summary disposition on this issue.

Next, we address defendant's argument that the trial court erred in holding that the payments from Quixtar (an affiliate) to plaintiff were royalties and not sales. We disagree.

Under MCL 208.9(7)(c), a taxpayer can deduct royalties from its tax base for the purposes of the SBTA. However, the word "royalties" is not defined in the SBTA. Michigan courts have addressed the definition of royalties. In *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 373 NW2d 730 (1985), our Supreme Court was called on to define the meaning of "royalties" in the context of oil and gas leases under the SBTA. The Court initially relied on dictionary definitions, stating:

> *The Random House College Dictionary* defines a "royalty" as:
>
> > [A] compensation or portion of the proceeds *paid* to the owner of a right, as a patent or oil or mineral right, for the use of it

. . . an agreed portion of the income from a work paid to its author, composer, etc., usually a percentage of the retail price of each copy sold . . . a royal right, as over minerals, granted by a sovereign to a person or corporation . . . the *payment* made for such a right. [*The Random House College Dictionary* (rev ed), p 1150. Emphasis added.]

This definition includes mineral and oil "royalties" with the "royalties" paid for patents and copyrights and refers to them as a "payment." Black's Law Dictionary defines a "royalty" as:

Compensation for the use of property, usually copyrighted material or natural resources, expressed as a percentage of receipts from using the property or as an account per unit produced. A payment which is made to an author or composer by an assignee, licensee or copyright holder in respect of each copy of his work which is sold, or to an inventor in respect of each article sold under the patent. Royalty is share of product or profit reserved by owner for permitting another to use the property. . . . In mining and oil operations, a share of the product or profit *paid* to the owner of the property. [Black's Law Dictionary (5th ed), p 1195. Emphasis added.]

[*Mobil Oil Corp*, 422 Mich at 484.]

Following *Mobil Oil*, this Court determined in *Mourad Bros, Inc, v Dep't of Treasury*, 171 Mich App 792, 796; 431 NW2d 98 (1988), that a royalty can result where a taxpayer pays a percentage of its gross sales for the right to use a style, trademark, or trade names. *Mourad* cited *Mobil Oil* for the proposition that royalties are "payment received for the use of property." *Id*. Later, in *Zenith Data Sys v Dep't of Treasury*, 218 Mich App 742, 747; 555 NW2d 264 (1996), this Court further explained that the definitions listed in *Mobil Oil* were given in the context of oil and gas royalties, and the definitions "were not used as an all-encompassing definition of royalties for SBTA purposes."

In *Michigan United Conservation Clubs v Dep't of Treasury*, 239 Mich App 70, 79; 608 NW2d 141 (1999), aff'd by equal division 463 Mich 995 (2001), this Court further defined the definition of royalties. The Court quoted the above definitions from *Mobil Oil* and explained that a royalty "has the following elements or characteristics: (1) it is a payment, (2) in the form of either the product itself or proceeds from the sale of the product, and (3) made in consideration for the use of the property." The Court subsequently held that tax credits were not royalties because they failed to meet each of the three elements, including the element that a royalty must be in the form of the product itself or proceeds from the sale of the product. *Id*. In *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 673; 649 NW2d 760 (2002), this Court subsequently used the same three-part test to determine that network affiliation fees paid by cable operators to TV networks were royalties within the meaning of the SBTA. The Court also explained that the affiliation fees were payment for the use of copyrighted material that were based on the number of subscribers, and this brought the fees directly within the Black's Law

Dictionary definition that our Supreme Court relied upon in *Mobil Oil*. *Id*. at 673-674. Defendant also references unpublished decisions of this Court that have used the three-part definition articulated in *Michigan United Conservation Clubs.*

The trial court rejected defendant's claim that "the payments do not meet the definition of royalty under *Mobil Oil* because they are based on a percentage of the sale of manufactured products and not a percentage or either (1) the licensed product itself; or (2) the proceeds from the sale of the licensed product." According to the trial court, the result of such a holding would be that "royalties [could not] arise for the purposes of the SBT[A] unless the licensed intangibles, such as the Contacts Lists here, [were] later sold." The court distinguished *Mobil Oil* because it related only to mineral and oil operations, and further referenced *Zenith Sys*, which provided that *Mobil Oil* did not provide an all-encompassing definition of royalties. *Zenith Data Sys*, 218 Mich App at 747. The trial court explained that case law did not require that the licensed property be sold to constitute a royalty because payment based on a percentage of the total sales for the use of licensed property was sufficient to constitute a royalty under *Mourad Bros*.

On appeal, the parties initially dispute whether the Supreme Court's definition of "royalties" announced in *Mobil Oil* applies outside of the context of oil and gas royalties. The parties' larger dispute centers around whether royalties must take the form of either a product itself or the proceeds from the sale of a product, pursuant to the second element articulated by the Court in *Michigan United Conservation Clubs*.

Overall, we agree with the result reached by the trial court. While it appears this Court has attempted to further define the definitions of royalties as provided in *Mobil Oil*, we are not convinced that the definition should be restricted in the manner suggested by defendant in this circumstance. Such a conclusion would lead to a result that would disallow royalties for the use of the customer list in this case unless it was sold. Rather, as acknowledged by this Court in *Zenith*, we conclude that the definition is adaptable and there is no all-encompassing definition for royalties. Further, in relying the basic definition set forth in *Mobil Oil*, a royalty could come from a percentage of the receipts from the use of property or a share of the profit resulting from another's use of property. *Mobil Oil*, 422 Mich at 484, quoting Black's Law Dictionary (5th ed), p 1195 ("Compensation for the use of property, usually copyrighted material or natural resources, expressed as a percentage of receipts from using the property or as an account per unit produced. . . . Royalty is share of product or profit reserved by owner for permitting another to use the property. . . ."). In addition, this Court has reached a similar result in the past in *Mourad*. While defendant is correct that *Mourad* is non-binding under MCR 7.215(J)(1) because it was published before November 1, 1990, *Mourad* is nevertheless persuasive and demonstrates plaintiff's argument that royalties do not have to be payments made in the form of a product or proceeds from the sale of a product. Ultimately, because the payments at issue were based on a percentage of gross sales and were facilitated by use of the licensed property, we conclude that the payments were royalties, and affirm the decision of the trial court.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood